# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

ANDREW JAMES MCGONIGLE                         CIVIL ACTION

VERSUS                                         25-152-SDD-RLB

SHOPPERSCHOICE.COM, L.L.C.,
doing business as bbqguys.com

## RULING

This matter comes before the Court on the Motion to Dismiss or, in the alternative, to Stay by Shopperschoice.com, L.L.C., doing business as bbqguys.com ("Shopperschoice.com" or "Defendant").[1] Plaintiff Andrew James McGonigle ("Plaintiff" or "McGonigle") opposes the motion,[2] to which Shopperschoice.com has filed a reply.[3] After the motion was submitted, the parties provided supplemental authority for the Court's consideration.[4] The Court has considered the law, arguments, and submissions of the parties and is prepared to rule. For the following reasons, Shopperschoice.com's motion[5] is denied.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This class action suit arises out of the receipt of unsolicited text messages. Plaintiff, as putative class representative, alleges that he obtained a new telephone number on August 5, 2024, after moving from Florida to Virginia.[6] That day, he allegedly registered this telephone number with the Federal Trade Commission's Do Not Call Registry ("DNC

---

[1] Rec. Doc. 47.
[2] Rec. Doc. 52.
[3] Rec. Doc. 53.
[4] *See* Rec. Docs. 59, 60, 62, 66, 72, 74.
[5] Rec. Doc. 47.
[6] Rec. Doc. 42, ¶¶ 8, 12, 27.

Registry").[7] When he did so, he discovered that the number had been on the DNC Registry since 2014.[8]

It is further alleged that on September 9, 20, and 26, 2024, and October 3, 6, 10, 13, and 16, 2024, Plaintiff received text messages from Defendant advertising and marketing its businesses or services.[9] These messages were intended for someone other than Plaintiff.[10] Plaintiff alleges that he did not give Defendant prior express consent or permission to send these messages,[11] nor did he request information or promotional materials from Defendant.[12] At least 8 of the text messages were delivered, or caused to be delivered, 31 days or more after Plaintiff registered with the DNC Registry.[13]

Plaintiff alleges that he is the regular and sole user of his telephone number[14] and that it is his only telephone number.[15] He uses the number for personal and residential purposes,[16] as one would use a landline in their home.[17] For example, he uses it to communicate with friends and family, schedule personal appointments, and for other household purposes.[18] He further alleges that he does not use the number for business or commercial purposes.[19] Instead, he personally pays for the number and does not receive reimbursements from businesses.[20]

---

[7] *Id.* at ¶ 11.
[8] *Id.*
[9] *Id.* at ¶¶ 17–18, 21.
[10] *Id.* at ¶ 20.
[11] *Id.* at ¶ 22.
[12] *Id.* at ¶ 23.
[13] *Id.* at ¶ 19.
[14] *Id.* at ¶ 8.
[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 9.
[17] *Id.* at ¶ 13.
[18] *Id.* at ¶ 15.
[19] *Id.* at ¶ 10.
[20] *Id.* at ¶ 16.

Plaintiff claims that Defendant's unsolicited text messages caused him to suffer actual harm through an invasion into his privacy, an intrusion into his life, and a private nuisance.[21] Upon Plaintiff's information and belief, Defendant allegedly knew, or should have known, that his telephone number was registered with the DNC Registry.[22] Likewise, "Defendant knowingly chose not to subscribe [to] the FCC's Reassigned Number Database, which is a database of telephone numbers for companies to use to avoid making telemarketing calls to reassigned telephone numbers, including specifically those registered with the DNC Registry."[23]

On October 25, 2024, Plaintiff filed this class action suit against Defendant in the United States District Court for the Eastern District of Virginia.[24] The case was transferred to this district on February 19, 2025.[25] Plaintiff asserts a claim under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(c)(5).[26] Defendant moves to dismiss this claim, arguing that Plaintiff has failed to state a cause of action.[27]

Alternatively, Defendant moves to stay this case pending the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*.[28] Shortly after Defendant filed its motion, the Supreme Court issued a decision in *McLaughlin*.[29] As such, Defendant's alternative request for a stay is denied. The Court will address Defendant's arguments for dismissal in turn.

---

[21] *Id.* at ¶ 24.
[22] *Id.* at ¶ 25
[23] *Id.* at ¶ 26.
[24] Rec. Doc. 1.
[25] Rec. Doc. 24.
[26] Rec. Doc. 42, ¶¶ 55–63.
[27] Rec. Doc. 47-1, pp. 4–16.
[28] *Id.* at p. 16.
[29] *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*., 606 U.S. 146 (2025).

## II.　RULE 12(B)(6) STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[30] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[32]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[33] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[34] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[36] "Furthermore, while the court must accept well-

---

[30] *In re Katrina Canal Breaches Litig.*, 495 F. 3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F. 3d 464, 467 (5th Cir. 2004)).
[31] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[32] *In re Katrina Canal Breaches Litig.*, 495 F. 3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
[33] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[35] *Id*.
[36] *Id*.

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[37] "On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[38]

### III. LAW AND ANALYSIS

47 U.S.C. § 227(c) provides privacy protections to "residential telephone subscribers" with respect to unsolicited telephone communications.[39] Subsection 227(c)(5) provides these subscribers with a private right of action:

> **(5) Private right of action**
>
> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

---

[37] *Taha v. William Marsh Rice Univ.*, No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F. 3d 353, 361 (5th Cir. 2004)).
[38] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[39] 47 U.S.C. § 227(c)(1). *See also* 47 C.F.R. § 64.1200(c)(2).

Defendant makes multiple arguments as to why Plaintiff failed to state a claim under Subsection 227(c)(5). It first argues that cell phones are not "residential telephone[s]" under Section 227(c), but even if they were, Plaintiff failed to allege that his cell phone is a "residential telephone."[40] Defendant further argues that Subsection 227(c)(5) applies to "telephone call[s]" only, not text messages.[41] However, if the Court were to find that Plaintiff pled a sufficient claim, he cannot succeed in recovering treble damages because he failed to allege that Defendant's violation of Subsection 227(c)(5) was willful and knowing.

### A. Scope of Subsection 227(c)(5) Post- *Loper*

"The TCPA was passed in 1991, one year before the advent of the text message."[42] Since the DNC Registry was created in 2003, the Federal Communication Commission ("FCC") has interpreted the TCPA to include text messages.[43] "Under the *Chevron* doctrine, courts 'unhesitatingly afford[ed] deference to the agency holding that a text message should be treated as a "call" for purposes of the TCPA.'"[44] "But *Chevron* deference is no more"[45] following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*.[46] As the Supreme Court recently explained in *McLaughlin*, "[i]n an enforcement proceeding, a district court must [now] independently determine for itself whether the agency's interpretation of a statute is correct."[47] As such, "[d]istrict courts are

---

[40] Rec. Doc. 47-1, pp. 5–12.
[41] *Id.* at pp. 12–15.
[42] *Alvarez v. Fiesta Nissan, Inc.*, No. 25-343, 2026 WL 202930, at *1 (S.D. Tex. Jan 26, 2026).
[43] *Id.* (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (F.C.C. 2003); 47 C.F.R. § 64.1200(e)).
[44] *Id.* (alteration in original) (quoting *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) (citing *Chevron USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984))).
[45] *Id.* at *2.
[46] 603 U.S. 369 (2024).
[47] 606 U.S. at 155.

not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."[48]

The Fifth Circuit has yet to analyze whether Subsection 227(c)(5) applies to cell phone text messages post- *Loper*. District courts throughout the country have gone both ways.[49] The Southern District of Texas recently took up the issue in *Alvarez v. Fiesta Nissan, Inc.*[50] The court thoroughly analyzed Subsection 227(c)(5) under the *McLaughlin* framework and found that the statute applies to cell phone text messages.[51] This Court agrees with its sister court's analysis and adopts it herein.

As the court explained, Subsection 227(c)(5) does not, nor does any part of the statute, define the term "telephone call."[52] "Where a statute leaves terms undefined, courts must 'accord those terms their "ordinary, contemporary, common meaning."'"[53] Although today one would not use the term "telephone call" to refer to a text message, "this Court is cognizant that a usage which seems obvious now is not always a reflection of the original meaning of the statute."[54] "[E]very statute's meaning is fixed at the time of enactment."[55] Thus, "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may

---

[48] *Id.*
[49] *See, e.g.*, *Alvarez*, 2026 WL 202930; *Wilson v. Better Mortg. Corp.*, ---F. Supp. 3d---, No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025) (finding that Subsection 227(c)(5) applies to cell phone text messages). *See also e.g.*, *Davis v. CVS Pharmacy, Inc.*, ---F. Supp. 3d---, No. 24-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) (finding that Subsection 227(c)(5) does not apply to cell phone text messages).
[50] *See Alvarez*, 2026 WL 202930.
[51] *Id.* at *3–*6.
[52] *Id.* at *4.
[53] *Id.* (quoting *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396, 403–04 (5th Cir. 2024))).
[54] *Id.* (emphasis omitted).
[55] *Loper Bright*, 603 U.S. at 400 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis omitted)).

embrace later technological innovations."[56] "For that reason, 'a 2012 statute referring to aircraft, if still in effect in 2112, would embrace whatever inventions the label fairly embraces, even inventions that could not have been dreamed of in 2012.'"[57]

The *Alvarez* court thus analyzed whether "the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991."[58] It looked to the definition of "call" during the passage of the TCPA.[59] At that time, "call" was defined as "to get or try to get into communication by telephone."[60] It also looked to the definition of "telephone." When used as a noun, telephone meant "an instrument for producing sounds at a distance; *specif*: one in which sound is converted into electrical impulses for transmission by wire."[61] When used as a verb, it meant to "communicate by telephone," "send by telephone," or "speak to by telephone."[62]

The defendant in *Alvarez* argued that because the word "telephone" modifies the word "call," it "precludes the complete phrase 'telephone call' from encompassing the concept of a text message, as telephones are defined by their ability to transmit sound."[63] In rejecting this argument, the court explained:

> Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). "[T]he fact that a statute can be applied in situations not

---

[56] *Alvarez*, 2026 WL 202930, at *4 (quoting *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring) (quoting A. SCALIA & B. GARNER, READING LAW 16 (2012))).
[57] *Id.* (quoting SCALIA & GARNER, *supra*, at 16).
[58] *Id.*
[59] *Id.*
[60] *Id.* (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 197 (1990)).
[61] *Id.* (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, *supra*, at 1212).
[62] *Id.* (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, *supra*, at 1212).
[63] *Id.*

expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation omitted). Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. SCALIA & GARNER, *supra*, at 16. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls." That society does not today has no bearing here.[64]

The court then analyzed the statutory context of Subsection 227(c)(5).[65] It found that "two reasons stand out as to why the subsection containing § 227(c)(5), and the broader structure of the Act, counsel reading the cause of action to include 'text messages'":

> First, Section 227(c)(5) explicitly confers a private right of action for "violation of the regulations prescribed *under this subsection*[.]" 47 U.S.C. § 227(c)(5). As Plaintiff points out, section 227(c)(1) and (2) make clear that the subsection was included to direct the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object[,]" and to promulgate regulations in furtherance of that interest. 47 U.S.C. §§ 227(c)(1)-(2) (emphasis added). And the TCPA defines "telephone solicitations": the "initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *Id.* at § 227(a)(4) (emphasis added). This language is broad, coloring the cause of action and the entire subsection it enforces. Congress added that definition later, after text messaging had become commonplace. Some courts have interpreted that amendment to § 227(c)(1)—and concurrent lack thereof to § 227(c)(5)—as evidence that Congress "intend[ed] different meanings" for the two provisions. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) (quotation omitted). But those two provisions are within the same subsection. An equally plausible implication may be drawn

---

[64] *Id.* at *5.
[65] *Id.* at *5–*6. *See also King v. Burwell*, 576 U.S. 473, 492 (2015) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation omitted)).

that Congress believed its definition of "telephone solicitation" in the directive of the subsection, combined with the FCC's interpretation, was enough to broaden the subsection's cause of action to include *all* telephone solicitations. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025).

Second, the Court cannot ignore the fact that Section 227(b) of the TCPA uses the same term—"telephone call"—as it does in § 227(c). As mentioned previously, the FCC as well as myriad courts have for years interpreted "telephone call" in § 227(b) to include text messages. *See supra* note 3. Importantly, that usage has been ratified by Congress. *See Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in § 227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). As the Supreme Court has held, "[w]here, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969)). This ratification is, of course, only "conclusive" as to § 227(b); that said, it remains strongly persuasive as to a subsection of the same statute that uses identical language.[66]

Considering the foregoing, the Court finds that Subsection 227(c)(5) applies to cell phone text messages. Though *Alvarez* did not directly address the issue of whether cell phones are "residential phone[s]" within the broader meaning of Section 227(c), the issue is implicit in the court's ruling, as text messages are received via cell phones. The Court likewise conducted its analysis under the assumption that plaintiff's telephone was a cell phone.[67] Moreover, "district courts that have considered this issue post-*Loper* . . . have reached the same conclusion: cellular telephone users can be considered 'residential

---

[66] *Alvarez*, 2026 WL 202930, at *5–*6.
[67] *See id.* at *5 ("Although Plaintiff likely received the text messages at issue via a modern cellphone data messaging service, in 1991 he might very well have received messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former?").

telephone subscribers' under § 227(c)."[68] Any interpretation otherwise "is . . . contrary to Congress's purpose in enacting the TCPA."[69] "That section's express aim was to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."[70] "Those privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than on a landline."[71] Therefore, as a matter of law, Plaintiff can succeed in his claim under Subsection 227(c)(5), provided that he has alleged that he is a "residential telephone subscriber."

### B. Plaintiff's Allegations as to "Residential Telephone Subscriber"

To succeed in alleging that he is a "residential telephone subscriber," Plaintiff "must specify the basic nature of the 'residential telephone subscriber' at issue, using clear and direct allegations regarding the residential telephone number . . . ."[72] He must do more than make the conclusory allegation that his phone number is "for personal use" and "not

---

[68] *Cacho v. McCarthy & Kelly LLP*, No. 23-11157, 739 F. Supp. 3d 195, 208 (S.D.N.Y. 2024) ("The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone."); *Lyman v. Quinstreet, Inc.*, No. 23-05056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ("[T]he statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of residential telephone subscribers"); *Lirones v. Leaf Home Water Sols., LLC*, No. 23-02087, 2024 WL 4198134, at *5–*7 (N.D. Ohio Sep. 16, 2024); *Hudson v. Palm Beach Tan, Inc.*, No. 23CV486, 2024 WL 4190513, at *5–*6 (M.D.N.C. Aug. 12, 2024) ("Third, this approach is consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of 47 U.S.C. § 227 does not explicitly preclude a cell phone from being considered a 'residential telephone.' … Further, the private right of action created under 47 U.S.C. § 227(c)(5) of the TCPA is premised on a 'violation of the regulations prescribed under this subsection.' As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. Those same regulations also unambiguously state that the rules set forth in these subsections 'are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.' 47 C.F.R. § 64.1200(e).").
[69] *Lyman*, 2024 WL 3406992, at *4.
[70] *Id.* (internal quotations omitted).
[71] *Id.*
[72] *Lawson v. Nations Health Grp., Inc.*, No. 23-80893, 2024 WL 5103503, at *3 (S.D. Fla. Aug. 8, 2024).

associated with a business."[73] The Court finds that Plaintiff meets this standard. He clearly alleges that:

1) He is the regular and sole user of the subject telephone number[74];

2) It is his only telephone number[75];

3) He uses the telephone number for personal and residential purposes,[76] as one would use a landline in their home[77];

4) He uses the telephone number to communicate with friends and family, schedule personal appointments, and for other household purposes[78]; and

5) He does not use the telephone number for business or commercial purposes,[79] personally pays for the telephone number, and does not receive reimbursements from businesses.[80]

Thus, Plaintiff has pled a sufficient claim under Subsection 227(c)(5), and Defendant's motion is denied in this respect.

### C. Treble Damages

The Court further finds that Plaintiff has pled a sufficient claim for treble damages. To succeed in his claim at the motion to dismiss stage, Plaintiff must allege facts which, if taken as true, prove that Defendant "willfully and knowingly violated the regulations prescribed under [Subsection 227(c)]."[81] Plaintiff more than satisfies this standard. He alleges that "Defendant knew, or should have known, that [his] telephone number . . . was registered with the DNC Registry."[82] He then alleges that "Defendant knowingly chose not

---

[73] *Gillam v. Reliance First Cap., LLC*, No. 21-4774, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023).
[74] Rec. Doc. 42, ¶ 8.
[75] *Id.* at ¶ 13.
[76] *Id.* at ¶ 9.
[77] *Id.* at ¶ 13.
[78] *Id.* at ¶ 15.
[79] *Id.* at ¶ 10.
[80] *Id.* at ¶ 16.
[81] 47 U.S.C. § 227(c)(5)(c).
[82] Rec. Doc. 42, ¶ 25.

to subscribe [to] the FCC's Reassigned Number Database, which is a database of telephone number for companies to use to avoid making telemarketing calls to reassigned telephone number, including specifically those registered with the DNC Registry."[83] Accordingly, Defendant's motion is denied in this respect as well.

## IV.    CONCLUSION

For the foregoing reasons, Shopperschoice.com's motion[84] is denied.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>February 13, 2026</u>.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[83] *Id.* at ¶ 26.
[84] Rec. Doc. 47.