**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANTIAGO ROJAS, JOSEPHINO RAMIREZ, CATALINA ROBLES, JUAN MONTES, BENITO ESPINO, and GUILLERMINA PEREZ, on behalf of themselves and a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKO ZANINOVICH, INC, and SUNVIEW VINEYARDS OF CALIFORNIA, et al.,<br><br>Defendants. | Case No.: 1:09-cv-00705 AWI JLT<br><br>ORDER GRANTING MOTION TO STRIKE DECLARATION OF AARON WOLFSON<br><br>(Doc. 105) |

Defendant Sunview Vineyards of California, Inc. ("Sunview" or "Defendant") seeks to strike the declaration of Aaron Woolfson (Doc. 39), filed in support of Plaintiffs' motion for class certification. (Doc. 150). In addition, Defendant objects to the initial expert report of Mr. Woolfson, and asserts Mr. Woolfson is not qualified to testify as an expert. Therefore, Defendant seeks to have his opinions stricken or, in the alternative, to have a *Daubert* hearing regarding Mr. Woolfson's qualifications and conclusions. *Id.*

Plaintiffs filed an opposition to the motion on September 2, 2011, asserting that they had a duty to supplement the report in light of the information received in the declaration, and that Mr. Woolfson was a qualified expert. (Doc. 50). Defendant filed a reply on September 9, 2011. (Doc. 154). The Court heard arguments regarding this motion on September 16, 2011.

For the following reasons, Defendant's motion to strike the declaration and to strike the opinions of Mr. Woolfson is **GRANTED.**

**FACTUAL AND PROCEDURAL HISTORY**

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Sunview Vineyards of California. *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). At the time the action was brought, the plaintiffs were unnamed former and current employees of the defendants. *Id.* at 1156. Defendants to the *Doe* action, including Sunview, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008. Likewise, motions to sever the action were granted, and the Court required the plaintiffs to file amended pleadings against each defendant to effectuate the severance. On May 29, 2008, Santiago Rojas and Josefino Ramirez were named as plaintiffs in the Third Amended Complaint against Sunview. (*Doe*, Doc. 171)[1]. On March 31, 2009, the Court ordered Plaintiffs to finalize the severance by re-filing their suit in a new case number within twenty days. (*Doe*, Doc. 238).

On April 20, 2009, Plaintiffs filed their complaint against Defendant Sunview for the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract; and violation of unfair competition law. (Doc. 1). Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." *Id.* at 6. On September 22, 2009, an amended complaint added the following named plaintiffs: Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez. (Doc. 18).

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Therefore, the Court may take judicial notice of the docket in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.

Plaintiffs filed a motion for class certification on May 17, 2011. (Docs. 36-37). In support of the motion, Plaintiffs submitted a declaration of Aaron Woolfson, a retained expert. (Doc. 39). Mr. Woolfson asserted that, with the declaration, he amended his expert report regarding the application of pay code 31. (Doc. 39 at 3, 8). Mr. Woolfson stated he relied upon the information relayed to him by Tom Lynch to create his initial report, and learned from Defendant's counsel at his deposition that he had misapplied the pay code. *Id.* at 8. Therefore, in the "excess of caution," he re-analyzed the data in light of information he received at his deposition. *Id.*

**MOTION TO STRIKE THE DECLARATION OF MR. WOOLFSON**

I. <u>Legal Standard for Expert Reports</u>

The Federal Rules of Civil Procedure govern the use of expert witnesses, and requires a party to disclose the identity of expert witnesses expected to testify at trial. Fed. R. Civ. P. 26(a)(2)(A). When a witness is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," disclosure must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all the publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Disclosures and the accompanying reports must be made at the time and in the sequence ordered by the court. Fed. R. Civ. P. 26(a)(2)(D). If a report is required, the expert may not be deposed until after the report is provided. Fed. R. Civ. P. 26(b)(4)(A).

A party must supplement or correct disclosure or a response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). With an expert report, "the party's duty to supplement extends to both information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Further, "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are

due." *Id.* The requirement to "supplement or correct" under Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *United States v. 14.3 Acres of Land*, 72 Fed. R. Serv. 3d (Callaghan) 853, 2009 U.S. Dist. LEXIS 7248 at *7 (S.D. Cal. January 30, 2009) (citations omitted).

## II. Discussion and Analysis

Plaintiffs submitted a declaration of Aaron Woolfson in support of their motion for class certification, which Defendant argues was "untimely, procedurally unauthorized and woefully flawed." (Doc. 105 at 5). According to Defendant, the declaration "is nothing more than a supplemental expert report that does not comply with the applicable procedure for submitting a supplemental report and violates th[e] Court's order regarding the schedule for expert discovery." *Id.* Further, Defendant asserts the "myriad [of] errors" made in Mr. Woolfson's original report "would have been apparent had he taken the time to cross- check his conclusions against the data that was readily available to him. He failed to do so." *Id.* at 6. Rather, Defendant notes Mr. Woolfson relied upon information provided to him by Plaintiffs' counsel regarding pay code "031," and then changed the opinions and analysis of his initial report in the declaration. *Id.* at 9, 13.

On the other hand, Plaintiffs argue they "had a *duty* to supplement and clarify Mr. Woolfson's report once additional information was provided, shedding light on an important matter addressed in Mr. Woolfson's report." (Doc. 150 at 3). According to Plaintiffs,

> Mr. Woolfson prepared his supplementation based on information that was revealed to him by Sunview's counsel at his May 3, 2011 deposition. In Mr. Woolfson's May 16, 2011 supplementation, he reanalyzes a portion of his previous findings in light of this previously unprovided *or* mischaracterized information regarding Code 31. Specifically, Woolfson's supplementation was based on the revelation that his original understanding of one of defendant's database entries (Code 31) was mistaken.

*Id.* at 4. Plaintiffs contend that at his deposition, Defendant's counsel informed Mr. Woolfson that he applied pay code 031[2] in his initial report incorrectly, and "[t]he disclosure of this information allowed Woolfson to reanalyze the data provided by Defendant to determine whether Code 031 transactions by Defendants cured payroll deficiencies to class members related to minimum wage

[2] Pay code 031 is a method by which Defendant pays additional sums to piece-rate employees, when the amount of pieces picked for the pay period would not ensure payment of at least, minimum wage.

and piece rate work." *Id.* at 5. Further, Plaintiffs argue the supplementation was timely because Mr. Woolfson received the information on May 3, 2011, "and promptly carried out a new portion of his overall analysis of the data provided by Sunview and submitted his supplementation." *Id.* at 6.

In reply, Defendant argues, "Mr. Woolfson's purported need to submit a supplemental report with changed opinions directly resulted from his failure to review the PMK testimony of Sunview and his blind reliance on Plaintiffs' counsel and their misunderstanding of Sunview's payroll system." (Doc. 152 at 5).

In fact, Mr. Woolfson admitted at his deposition that he had not reviewed any deposition transcripts, including that of Defendant's PMK deposition, and was unaware that the PMK deposition had taken place. (Woolfson Depo at 43:6-10; 174:14-175:3; 182:2-14; 197:13-198:2.[3]) Mr. Woolfson admitted that he was unaware of the issues raised in this litigation and explained that he merely responded to a series of questions posed to him by Plaintiffs' lawyers (Id. at 44:9-15); in essence, he tallied various data as requested by the attorneys. *Id*. at 45:25-46:3.

Mr. Woolfson explained that his information about the pay codes used in Defendant's payroll program–and in particular, his knowledge of pay code 031— came from Plaintiffs' attorneys. Mr. Woolfson testified, "So here's the thing. I asked Tom and Steve what these codes were." (Woolfson Depo. at 128:14- 130:3) Mr. Woolfson clarified that he meant that he received the information about the pay codes from Plaintiffs' lawyers, Tom Lynch and Steve Hernandez. Id. Mr. Woolfson explained, " . . . I sent them this exact list that you have on the screen. I said, 'Please find out...'" . . . "Yeah, it's Codes Appearing In Data.doc. I said, 'Please find out what all of these mean from defense counsel so that I can conduct as thorough of an analysis as possible.' There's some e-mails–there are e-mails to that extent. This is what your company sent–your client sent back." Id. Then Mr. Woolfson admitted that pay code 031 *was on the list* entitled Codes Appearing In Data.doc. *Id*. at 130:18-131:17. Thus, his information on the topic was, in essence, the attorneys'

---

[3] Instead, in his supplemental report, he identifies "Files provided by Sunview and Reviewed by Me" which lists only the electronic, payroll/timekeeping database produced by Defendant as the only materials reviewed by him in conducting his review. (Doc. 39 at 2-3) However at his deposition, he also provided a list of pay codes that he indicated that he reviewed. (Woolfson Depo. at 20:12-22:22) There may have been other paper documents reviewed but there is no evidence presented here as to whether this is true or, if so, which documents were reviewed. Id.

interpretation of the meaning of the pay code. Woolfson admitted that some of the information Tom Lynch provided was incorrect. For example, Mr. Lynch gave him information which resulted in him excluding codes as "pay codes" that were, in fact, "job codes," though his supplemental report describes them as "paytypes." (Woolfson Depo. at 145:12-146:7; 83:15-18; Doc. 39 at 3.)

Notably also, while on a break from his deposition, Woolfson telephoned Plaintiffs' counsel, Mr. Palau and Mr. Lynch. In this conversation–while the deposition was still ongoing–Mr. Palau provided additional information to Mr. Woolfson that further explained the pay codes used by Defendant. (Woolfson Depo at 171:4-172:3; 178:21-179:2.) Mr. Woolfson explained that the attorneys told him that, "According to the PMK gentleman who was deposed said that 31 was a computer-generated makeup. But, in fact, as I just learned today, it is an adjustment to be applied at the end of the payroll. So I would like to have the opportunity to recast that and provide an errata. And I'm sorry." (Woolfson Depo at 171:17-22.) However, Mr. Gallegos–Defendant's PMK deponent– was not asked whether the "computer generated-makeup" was applied daily or at the end of the payroll period. However, when shown a list of the pay codes that Mr. Gallegos provided at his deposition, that included explanation as to the meaning of the codes, Mr. Woolfson admitted that the list would have triggered questions for him as to how pay code 031 was to be applied, although he seemed to indicate that counsel failed to obtain sufficient explanation from the PMK deponent regarding the application of the pay codes. *Id*. at 178:21-180:17.

Next, Mr. Woolfson admitted that he excluded "certain pay codes" from the database analysis because he "was told to . . . [by] Tom Lynch." (Woolfson Depo. at p. 68:11-69:13; 73:14-25) He clarified, "Tom Lynch told me how to use all the pay codes, except they were to apply specifically not to certain job codes."[4] *Id*. at 182:1-3. On the other hand, Mr. Woolfson admitted that he was not provided the list of pay codes produced by Defendant but, even if he had been, he would not have tabulated the data according to the descriptions provided by Defendant "*because these descriptions are wrong*." *Id*. at 189:15-19. Mr. Woolfson reported, "So there's certain things that I was aware of

---

[4] Other than to say that Tom Lynch told him to do it, he does not explain why he does not consider pay type 630, which describes when an employee makes boxes, in his tabulations. (Doc. 39 at 3)

and how to use them, but the description here and the way that I was told to use it is different than what I had been led to understand it to mean." *Id*. 181:10-14.

Plaintiffs' and Mr. Woolfson's attempt to place blame for this lack of understanding on Mr. Gallegos, is unjustified.

At his deposition, Mr. Gallegos testified,

> How about 31?
> A. It's a computer-generated makeup.
> Q. How is it different than 10?
> A. 10 is a manual-generated makeup code.

(Doc. 154, Ex 1 at 61.) No other questions were posed to him about pay code 031 or how it was applied. (Gallegos Depo.) Moreover, Mr. Gallegos' declaration filed in opposition to the motion for class certification further explains that pay code 031 signifies an amount added to a worker's paycheck to ensure that he receives minimum wage. (Doc. 116 at 3-4)

On the other hand, Mr. Woolfson admitted that he did not do a wholesale comparison of his results with the payroll register provided by Defendant such to verify his methodology. Instead, he compared his data points with the "constituent components" of the payroll register–meaning the hours worked as reflected on the payroll. (Woolfson Depo. at 77:8-21.) He reported that he "assumed" that if the "constituent components" were accurate, the total would be accurate as well.[5] *Id*.

Moreover, when asked specifically how he determined whether an employee was not being paid minimum wage, he referred to a piece of data that showed the hourly rate. (Woolfson Depo. at 94:2-19) In doing so, he failed to take into account other pay codes that worked in conjunction with the hourly rate that were designed to boost the rate of pay to minimum wage. *Id*. at 102:4-14. In fact, Mr. Woolfson testified that he was unaware that there was such a "wage accelerator." *Id*.

---

[5] Though Mr. Woolfson later claimed that he compared his data results with the pay stub information (*Id*.), this testimony is contradicted by his later declaration that he failed to consider pay code 031 for the entirety of a pay period–rather than just one day of the pay period–when identifying the total number of employees whom he reported had not been paid minimum wage and reporting that the number was fewer. (Doc. 39 at 8) In fact, he admitted that he interpreted pay code 031 to adjust the pay of the employee only as to one particular day, rather than as to the entire pay period. (Woolfson Depo. at 231:13-232:13)

Consistent with this testimony, Mr. Woolfson testified also that "pay code 10 is not how I– I didn't group these by pay code . . ." which meant that he failed to appreciate that when pay code 10 was used, it indicated that the employee's wage was increased to bring it up to minimum wage. *Id*. at 120:3-25. Instead, he testified that he believed that pay code 010 meant that there was a later entry made on the payroll program. *Id*. at 121:10-24.

On the other hand, Mr. Woolfson testified that he determined that some employees were paid on a piece rate basis because of the use of pay code 021 without hours worked being associated with this pay code. (Woolfson Depo. at 106:1-4) Mr. Woolfson's understanding of this pay code, once again, was provided to him by Tom Lynch. *Id*. at 113:1-6; 114:2-22. However, Mr. Nickerson–Defendant's retained expert–declares that pay code 021 without associated "hours worked" data, when used with other codes, may show, not that the worker was paid on a "piece rate," but that his work involved the use of equipment or that the employee received an incentive bonus and that the hours worked would be associated with these other codes, rather than the 021 pay code. (Doc 144, Ex. 44, at 10; Doc. 152, Ex 1 at 83; Doc. 152, Ex 1 at76-77; Gallegos Depo. at 61:18-20) On the other hand, Mr. Woolfson testified that pay code 412, "is not a standalone" code and that it must be used in conjunction with another code to have meaning. *Id*. at 134:19-20. However, to the contrary, Mr. Nickerson has attested that Mr. Woolfson's results show that he considered any use of pay code 412 that was not associated with an "hours worked" entry, as identification of a piece rate worker. (Doc. 144, Ex. 44 at 11) Finally, among other criticisms, Nickerson notes that Mr. Woolfson's conclusions that the database fails to demonstrate that workers were given meal and rest breaks is faulty given that there is no showing whatsoever that the payroll system would account for this time. (Doc. 144, Ex 44 at 11)

It is upon this factual backdrop that the Court decides the motion.

<u>A. Mr. Woolfson's declaration was not a proper supplemental report under Rule 26(e)</u>**.**

An expert's duty to supplement under Rule 26(e), is not a right to supplement at will. "Duties are usually owed to other people, and are not for the benefit of the party who has the duty." *Sandata Technologies, Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85176 (S.D.N.Y. Nov. 16, 2007) (rejecting an untimely supplemental report that benefitted only the party producing the report);

*see also Reid v. Lockhead Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("In short, Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion."). Here, Woolfson's supplemental report and the declaration offered in opposition to the motion for summary judgment, benefits only Plaintiffs.

Further, as Defendant argues, supplementation "was necessitated by the fact that Mr. Woolfson failed to adequately prepare for his initial report by relying on the representations of counsel, rather than reviewing the deposition of Sunview's witness on the topic of the payroll system." (Doc. 105 at 14).

Notably, a party may not rely on supplementation "as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." *Medtronic Vascular, Inc. v. Abbot Cardiovascular Systems, Inc.*, 2008 U.S. Dist. LEXIS 112148 at *6 (N.D. Cal. Oct. 15, 2008); *Plumley v. Mockett*, 2010 U.S. Dist. LEXIS 57254 (C.D. Cal May 26, 2010) (finding an expert's declaration was not a proper supplement under Rule 26(e) because "supplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement'"). Similarly, supplementation is not appropriate simply "because the expert did an inadequate or incomplete preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (citations omitted). As one district court explained:

> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003); *see also Akeva*, 212 F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or submit additional opinions would reek (sic) havoc in docket control and amount to unlimited expert opinion preparation."). Of particular concern to the Court is Mr. Woolfson's reliance on the understanding of Plaintiffs' lawyers as to the meaning of the data rather than reviewing the statements of the witnesses and other

evidence directly so that *he could decide* what was needed.[6] When the lawyers maintain control of the information and parse out only what they choose, this presents a real risk of sandbagging; not by the expert, *but by the attorneys*. However, the impact on the opponent is the same: incomplete information and deprivation of a full and complete expert deposition. The information was clearly available at the time Mr. Woolfson prepared his original report should have been known to him at that time. Consequently, Mr. Woolfson's lack of preparation and failure to review documents produced by Sunview and the other evidence describing the pay codes, is not a proper basis for supplementing his report.[7, 8]

B. Plaintiffs failed to show the supplemental report was substantially justified or harmless.

A party's failure to comply with the rules regarding expert witnesses and their reports exposes that party to sanctions under Federal Rule of Civil Procedure 37(c). The Ninth Circuit gives "wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which "gives teeth" to the requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), citing *Ortiz- Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001). This rule provides that a party who fails to provide required information "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Accordingly, Plaintiffs have the burden of establishing that their failure to follow the strictures of the Federal Rules was substantially justified and harmless. *Id.; see also Yeti by Molly*, 259 F.3d at 1107.

Further, the sanction of exclusion is self-executing, and "is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or

---

[6] He, not the lawyers, is the expert. He, not the lawyers, is best suited to comprehend the meaning of the codes in the database. By taking this course of action–relying on the lawyers' understanding of the information contained in the database–Mr. Woolfson and the lawyers risked that the lawyers were wrong.

[7] Because the Court concludes that the supplementation was not proper on these bases, it declines to address the issue of its timeliness under the Scheduling Order that setting the deadlines for expert discovery related to class certification.

[8] For the same reason, his declaration submitted in opposition to the motion to strike, which *further* explains his opinions, is not a proper supplementation. However, it does not appear that he intended it to be, given that it is incomplete and fails to meet most of the requirements for an expert report. Instead, it further demonstrates the inadequacy of his original and supplemental reports.

harmless." *Jimena v. UBS AG Bank*, 2010 U.S. Dist. LEXIS 117596, at *15 (E.D. Cal. Nov. 5, 2010), quoting *Salgado v. General Motors Corporation*, 150 F.3d 135, 142 (7th Cir. 1998); *see also Yeti by Molly*, 259 F.3d at 1106.

*1. Substantial Justification*

Plaintiffs assert, "Defendant's failure to adequately produce this necessary information regarding the application of the Code 31 payroll function provides all the necessary 'substantial justification' Plaintiffs' need." (Doc. 150 at 8). On the other hand, Defendant asserts the supplementation was not substantially justified because it "was necessitated by the fact that Mr. Woolfson failed to adequately prepare for his initial report by relying on the representations of counsel, rather than reviewing the deposition of Sunview's witness on the topic of the payroll system." (Doc. 105 at 14). Further, Defendant argues, "The lack of diligence on the part of Mr. Woolfson and Plaintiffs' counsel do not require the requisite substantial justification to avoid the consequences of Rule 37." (Doc. 153 at 8). As addressed above, failure to adequately review information that was readily available at the time of the preparation of the report is not a proper basis for a supplemental report.

*2. Harmlessness*

The Ninth Circuit has articulated several factors for the Court to consider when determining whether a violation of the expert discovery rules was harmless, including: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010), citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Notably, the Ninth Circuit has found that "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy" for a failure to comply with the rules regarding experts and their reports. *Yeti by Molly*, 259 F.3d at 1106.

Plaintiffs assert there is no prejudice because Defendant had three months to prepare a response to Mr. Woolfson's supplemental report, because the opposition to class certification was not due until August 18, 2011. (Doc. 150 at 9). Further, Plaintiffs assert "there is [no] potential

disruption to the trial or management of the case through permitting Woolfson's supplementation," and they did not act in bad faith. *Id.*

On the other hand, Defendant asserts that "the supplemental report is particularly prejudicial" because Defendant did not have the opportunity to depose Mr. Woolfson about his new opinions. (Doc. 105 at 5; Doc. 153 at 8). Expert discovery related to class certification concluded on May 6, 2011.[9] (Docs. 33, 35). As a result, Defendant would not have an opportunity to depose Mr. Woolfson regarding his methodology and analysis for his supplemental report *without further disruption to the case schedule*. To abate the prejudice, the Court would be forced to reopen discovery related to class certification to allow Defendant to depose Mr. Woolfson, and have its expert prepare a response to the supplemental report. This would likely cause further delay with resolution of Plaintiffs' motion for class certification and the trial. As a result, submitting the declaration and supplemental report of Mr. Woolfson was not harmless. *See Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("[d]isruption to the scheduling of the court and other parties is not harmless"); *Hoffman v. Const. Protective Servs.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (failure to comply with Rule 26 was not harmless where the court would be required to create a new briefing schedule").

**MOTION TO STRIKE MR. WOOLFSON'S OPINIONS**

I. Legal Standard for Expert Testimony

Under the Federal Rules, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Testimony must be "based upon sufficient facts or data" and be "the product of reliable principles and methods." *Id.* Further, the expert witness must have "applied the principles and methods reliably to the facts of the case." *Id.* The Supreme Court has imposed a "gatekeeping responsibility" for courts to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S 579, 589

[9] As Defendant notes, extension of rebuttal expert disclosure to June 10, 2011 "did not permit Sunview to conduct further discovery into Mr. Woolfson's new/changed opinions or re-open his deposition." (Doc. 153 at 8).

(1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (clarifying the "gatekeeping" obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge").

Before considering proffered expert testimony, a trial court "must merely make a determination as to the proposed expert's qualifications." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994). Further, a trial court is not to attempt to determine whether the expert's conclusions are correct, but rather only "the soundness of his methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

II. Discussion and Analysis

According to Mr. Woolfson, he was hired by Plaintiffs to provide database analysis and prepared an expert report on April 18, 2011. (Doc. 151 at 2). In his declaration filed September 2, 2011, Mr. Woolfson asserts he has twenty-four years of "professional experience working with large-scale databases" and has been retained "in approximately 54 class-action cases to analyze wage and hour data points." *Id.*

Defendant contends Mr. Woolfson lacks the necessary qualifications to offer expert opinions in this matter, and therefore seeks to strike all opinions offered by Mr. Woolfson. (Doc. 105 at 19). According to Defendant, Mr. Woolfson's academic career was insufficient to establish him as an expert: "He does not have an advanced degree, or even a bachelor's degree, and does not hold any of the standard database certifications used by Microsoft, Oracle, or any other software or database company. This lack of relevant experience and education renders him unqualified to provide expert testimony." (Doc. 105 at 6) (emphasis omitted). In addition, Defendant asserts errors in Mr. Woolfson's analysis "render his testimony inadmissible." *Id.* at 18. Specifically, Defendant points to Mr. Woolfson's decision to delete pay code 031 from his analysis when he completed the initial report. *Id.* at 18-19.

With the experience attested to by Mr. Woolfson, it appears he may be qualified as an expert.[10] Fed. R. Evid. 702 does not require an expert to have a college degree. Instead, “knowledge, skill, [or] experience” is sufficient to allow a witness to opine on topics that are beyond the typical knowledge of a lay person. Thus, the failure of Mr. Woolfson to have a college degree or to be certified on the topics raised by his report does not render him unqualified to opine here.

On the other hand, the Court is not convinced that Mr. Woolfson’s opinions are reliable. Clearly, the original report contains erroneous conclusions; even Mr. Woolfson admits this. (Doc. 39 at 8) Though he minimizes the degree to which his original report is wrong, the fact remains that it is wrong.

Likewise, Mr. Woolfson fails to adequately explain why he took certain actions, i.e. excluding certain “pay types” such as “make boxes” or to outline the assumptions he made in his tabulations. For example, he asserts that Defendant is flat wrong that there are no “purely piece rate workers”–he concludes this is the case because he finds pay codes without associated hours–and that it has wrongly described its pay codes (*Id*. at 189:15-19).[11] All hubris aside, notably, Mr. Nickerson has investigated Mr. Woolfson’s results and has been able to replicate them, though not completely. (Doc. 152, Ex 1 at 26-27; 30-32; 57-58; at 65-66) In doing so, Mr. Nickerson used the very assumptions that Mr. Woolfson made and determined that Mr. Woolfson’s conclusions resulted in significant incorrect tabulations. More important, Mr. Nickerson *compared* Woolfson’s results to the data Sunview produced and determined that Mr. Woolfson’s results are incorrect because he omitted certain data. (Doc. 152, Ex 1 at 32)

---

[10] The Court notes that his report fails to provide “ a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.” Fed. R. Civ. P. 26(a)(2)(B)(v). Instead, while noting that he has “been retained as either a consulting or testifying expert in database analysis in over 40 cases,” he identifies only two cases where “the court has relied upon my expert findings” (Doc. 39 at 200) Moreover, though his CV details his professional experience, it appears that little of the work he has done relate to searching databases and reporting tallies for categories of data. (Doc. 39 at 196-200) It appears that this type of experience has been gained over the last two-and-a-half years through forensic work with attorneys. (Woolfson Depo. at 10-14) However, once again, there is little detail included in the deposition transcript. However, Defendant focuses its argument only Mr. Woolfson’s lack of formal education.

[11] On the other hand, Mr. Nickerson reports that, “There are no instances of piece rate payments without associated hours somewhere in the Payroll Detail Data.” (Doc. 144, Ex. 44 at 12)

Perhaps most damning is Mr. Woolfson admission that, "So there's certain things that I was aware of and how to use them, but the description here and the way that I was told to use it is different than what I had been led to understand it to mean." (Woolfson Depo. at 181:10-14.) Therefore, considering Woolfson's admitted error regarding the pay code 031, his failure to conduct any expert investigation or analysis into the meaning of Defendant's pay codes, his apparent willingness to offer conclusions about ultimate issues, i.e. lack of meal and rest breaks, without adequate foundation and given that he failed to conduct a holistic verification of his results by comparing them against Defendant's payroll register, the Court lacks any confidence in the reliability of Mr. Woolfson's findings. Thus, in performing its gatekeeper function, that Court concludes that Mr. Woolfson's methodology is so inherently flawed that it cannot permit the use of his opinions rendered thus far.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendant's motion strike the declaration offered in opposition to the motion for class certification of Aaron Woolfson (Doc. 39) is **GRANTED**;
2. Defendant's motion to strike all opinions of Aaron Woolfson is **GRANTED**; and
3. Defendant's request for a *Daubert* hearing is **DENIED** as **MOOT**.

IT IS SO ORDERED.

Dated: **September 19, 2011**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE