**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **DAVID VAN ELZEN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**ADVISORS IGNITE USA LLC**, an Illinois limited liability company, and **STEVEN DEJOHN,** an Illinois individual,<br><br>*Defendants.* | Case No. 1:22-cv-00859-WCG<br><br>Judge William C. Griesbach |

## DECLARATION OF EXPERT AARON WOOLFSON

I, Aaron Woolfson, state and declare as follows:

1. I have been retained by the Plaintiff to determine whether there is a reliable methodology for analyzing the call records in this lawsuit reflecting the calling done by Defendants Advisors Ignite USA LLC and Steven DeJohn ("Defendants").

2. More specifically, I have been asked to opine whether there is a reliable method to identify which calls in the call records (a) were made to telephone numbers assigned to a cellular telephone service that had not been ported within fifteen days prior to the calls, and (b) resulted in the transmission of pre-recorded messages.

3. As described in this Declaration, it is my conclusion that using the call records produced in this matter there is a reliable method to identify which calls in the call records (a) were made to telephone numbers assigned to a cellular telephone service that had not been ported within fifteen days of the calls, and (b) resulted in the transmission of pre-recorded messages.

4. Based on my analysis of the Defendant's call records, it is also my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the call records, records of leads, and/or other records maintained by, or on behalf of Defendants.

5. This report reflects the results of my study of the underlying facts, independent analysis of the data and documents provided by the Defendants and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances.

6. I am personally familiar with the matters that are contained within this declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

7. I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls. I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries. My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number generator.

8. My qualifications and curriculum vitae are attached to this expert report as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and State courts.[1] My testimony has been relied upon by courts in both individual and class actions,[2] by plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including TCPA claims.

9. I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of

---

[1] *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ...") *(ABM Industries Overtime Cases, A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018))*. (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015 ECF 132 at page 3.

America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff. These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and time keeping integration technologies. It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information. Other processes necessitated integrating fax and OCR[4] capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these events.

10. I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day. To date, hundreds of millions of calls have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services. [5]

11. I have developed highly available, upwardly scalable databases for use in the telecommunications industry. The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities. Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks,

---

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable text *while* a fax was being transmitted to the bank's computers for integration with a database.

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States Government, including the Department of Justice.

12. Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted. I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

13. I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

14. I held a CPCN[6] ("Certificate of Public Convenience and Necessity") – a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations. The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a reissue of my initial CPCN granted to TelSwitch on June 10, 1994, which I held for approximately 18 years before taking a hiatus from providing public telephone services. The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built, and programmed with the phone network for the purpose of providing wholesale and retail telecommunications services.

15. I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of pre-recorded calls.

16. For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of the defendant in a case in which the Court certified a class of consumers who received pre-recorded calls to their cellular telephone numbers.

---

[6] Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022). Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

17. I am not aware of any court that has issued an opinion that I was not qualified as an expert related to my opinions on the use of telephone systems or involving analysis of call records.

**Expertise Specifically Related to Database work.**

18. I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

19. I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin). I have been told that, among other cases, *Bluford v Safeway, Inc*. established the framework for what eventually became known as AB1513 and Labor Code section 226.2, which governs compensation in the piece rate context.

20. In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court). Relying heavily upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes. The court noted that there was sufficient evidence contained within my expert report to support certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

21. I was also expert in *Beatriz Aldapa And Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC,* (Case No. 1:15-CV-00420-DAD-SAB ED, Ca.), where the employer used Datatech to maintain an accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

22. I have applied similar methods to structure large amounts of unstructured data on behalf of defendant *Verizon Wireless* and *Collecto* in *Lofton v. Verizon* (Case No. 3:13-cv-05665)

and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*, I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in defendant Verizon's possession that Plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place. I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement. The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

**Materials and Documents Reviewed and Relied Upon.**

23. In conducting my analysis and preparing my conclusions and opinions, I relied upon the following materials and information:

**I. Materials that I relied upon:**

(a) The Amended Complaint, ECF 20.

(b) MobileSphere's production of call records for calls made by Defendants using MobileSphere's software contained within the file *cdrs 630-919-8337.csv* (the "CDRs"):

(c) Declaration of Toufic Mobarak (07/07/2022) (Exhibit 6).

**II. Electronic database resources that are available to me:**

(a) TelLingua isWireless data exchange, historical.[7]

(b) iConectiv isWireless porting (WDNC) information.[8]

---

[7] TelLingua is a company based in Texas that offers a historical database of all of the NECA numbering assignments, as well as TelCordia's historical Local-Routing-Number (LRN) assignments and NeuStar's historical Number Portability change records, and serves as a central repository the historical information used by telephone companies for the proper routing of telephone calls, and by experts to determine current and historical company-name and service-type assignments. I used TelLingua because it is the same authoritative database that telephone companies use when tagging numbers for historical isWireless and isPorted purposes. TelLingua is reliably and accurately able to provide the data from NeuStar and TelCordia to their customers for real-time and historical purposes, and is used by dozens of large telephone companies, including Utility Telephone and Consolidated Communications, for purposes of obtaining the authoritative routing information from National Exchange Carrier Association ("NECA"), TelCordia, and NeuStar, for real-time and historical purposes.

(c) The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.

**Methods and Tools Used to analyze Records.**

24. I create and analyze databases using Structured Query Language (SQL). A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information. Tables that share at least one attribute in common are "related." Tables without a common attribute may still be related via other tables with which they do share a common attribute. The pathways relating those separate tables are called "joins." Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information. To access such information, a user sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages." The most common query language is SQL. A proper query in this language consists of one or more "clauses." Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses. Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as well as the complex syntax of the specific query language.

25. When analyzing call records, I start by creating a database to serve as a repository for the call records. I then create a pair of database tables to accumulate the results of the associated TelLingua fields, which contains the *isPorted*, *isWireless*, *portDate*, and *carrierName* for each call.

26. By using a set of standardized SQL queries, I am able to tag each call record according to (a) the date of a telephone call; and (b) the disposition of the call, if one is present; and (c) the length of the call; and (d) any other data field contained in the call records. I am also able to add whether the number was assigned to cellular service when the call was received, and

[8] TelSwitch, Inc. is a reseller of iConectiv.

whether the number had been ported, and if so when.

27. This is precisely the task that I undertook for Plaintiff in this matter, and I was guided by my many years of experience with these precise tasks. I have constructed all SQL statements myself and am the sole author of this work product.

**Steps taken to Organize and Analyze the SlyBroadcast Call Records.**

28. I started by opening the file that contained Defendants' call data. I did this to (a) determine the format that the CDRs were stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of the calls.[9]

29. Next, I imported the CDRs into a SQL database table using Microsoft SQL™ Server Management Studio ("SSMS"). The CDRs that I imported included a total of 44,724 calls to 40,777 unique telephone numbers.

30. I then ran SQL statements to remove any call that was duplicative of another call and/or (b) to a number that did not contain a 2 through 9 in the first digit of the area code and/or (c) that did not have an area code associated with the one of the fifty states, the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, North Mariana Islands, or American Samoa.

31. These steps resulted in the exclusion of one (1) duplicate record and eight (8) calls to telephone numbers that did not have an area code associated with the one of the fifty states, the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, North Mariana Islands, or American Samoa.

32. I then compiled the list of the 44,639 calls to 40,703 unique numbers into a Comma-Separated-Value (".csv") flat file that I sent to TelLingua to indicate (a) whether each number *isWireless*, and (b) whether the number *isPorted*, and, if so, the date(s) it was ported.

33. Using the return-results that TelLingua compiled using the telephone

---

[9] I did not need to apply any pre-process to the CDRs. They appeared to have originated from an electronic call data capture system that was already Electronic Data Interface ("EDI") capable.

companies' data, I then tagged each of the remaining calls with *isWireless*, *isPorted*, *isPortedDate,* and associated date, and omitted any calls that were made to (a) a telephone number that was not assigned to a cellular service at the time of the call or (b) a telephone number that had been ported to a cellular service within the fifteen days before the call was made or (c) that were made to a telephone number for which the associated telephone carrier could not be determined for the date of the call.

34. These steps resulted in the exclusion of 6,732 calls to telephone numbers that were not wireless on the date that they were called, 148 calls to telephone numbers that were ported within fifteen (15) days of the calls being made, and 76 calls to telephone numbers for which the carrier could not be identified for the date of the calls.

35. As a result, I was able to identify 37,759 calls in the call records that were placed between March 17, 2022 and June 30, 2022 to 34,897 unique numbers that were wireless and had not been ported within 15 days of the call.

36. I then confirmed that the records for each of the 37,759 calls reflected a "*status*" field indicating "success", which "indicates the call was successfully placed and a pre-recorded message was deposited in the voicemail of the telephone number indicated" in the call record. *See* Mobarak Decl. at ¶ 9.

37. An output reflecting the number of calls received by each of the 34,897 unique telephone numbers that received one (1) or more of the successfully transmitted pre-recorded calls is attached as Exhibit 7. Of these, there were 14,225 unique telephone numbers with an area code starting with a 7, 8, or 9, which received in the aggregate 15,422 successfully transmitted pre-recorded calls. *See* Exhibit 7.

**Conclusions.**

38. It is my opinion that using the call records produced in this matter there is a reliable method to identify which calls in the call records (a) were made to telephone numbers assigned to a cellular telephone service that had not been ported within fifteen days of the calls, and (b) resulted in the transmission of pre-recorded messages.

39. It is also my opinion that there is a reliable method to identify calls with other particular criteria based on the other data included in the CDRs and any other

records maintained or produced by or on behalf of Defendants in this case.

40. Applying these methodologies to the Call Detail Records and any other records maintained or produced by or on behalf of Defendants in this case.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed this 27th day of September, 2023 in Pleasant Hill, California.

Aaron Woolfson p