**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ALISHA SALADINO** and **DAVID DONAHUE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br>v.<br><br>**MAD CITY HOME IMPROVEMENT, LLC d/b/a MAD CITY WINDOWS & BATHS**<br><br>*Defendant*. | Case No: **0:24-cv-01419-NEB-ECW**<br><br>Presiding: **Hon. Judge Nancy E. Brasel**<br>Magistrate: **Hon. Elsa M. Bullard** |

## DECLARATION OF EXPERT AARON WOOLFSON

I, Aaron Woolfson, state and declare as follows:

1. I have been retained by the Plaintiff to determine whether there is a reliable methodology for analyzing the call records in this lawsuit reflecting the calling done by or on behalf of the Defendant, Mad City Home Improvement, LLC d/b/a Mad City Windows & Baths ("Mad City" or "Defendant" as captioned).

2. More specifically, I have been asked to opine whether there is a reliable method to identify which calls contained within in Call Detail Records ("CDRs") maintained by or on behalf of Defendant were placed to telephone numbers that were on the national Do Not Call ("DNC") list for more than thirty days. It is also my opinion that there is a reliable method to identify calls to numbers that had been called after their placement on the Defendant's Internal DNC ("IDNC") list.

3. Using methodologies that I have applied in several hundred matters on behalf of plaintiffs and defendants, it is also my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the CDRs, records

of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

4. As described in this Declaration, it is my conclusion that there is a reliable method to identify from the CDR's that have been, or will be, produced in this matter, those calls that had been placed to numbers indicated on the national DNC list for more than thirty (30) days, as well as those numbers to which calls had been placed while the number was indicated on the Defendant's Internal DNC ("IDNC") list. It is also my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

5. This report reflects the results of my study of the underlying facts, independent analysis of the data and documents provided by the Defendant and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances.

6. I am personally familiar with the matters that are contained within this declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

1. I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls. I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries. My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number generator.

2. My qualifications and curriculum vitae are attached to this expert report as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and

Case 3:25-cv-01529-SDD-RLB Document 96-6 Filed 01/14/26 Page 3 of 19

State courts.[1] My testimony has been relied upon by courts in both individual and class actions,[2] by plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including TCPA claims.

3. I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff. These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and time keeping integration technologies. It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information. Other processes necessitated integrating fax and OCR[4] capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these events.

4. I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day. To date, hundreds of millions of calls have been handled by Canvas on

---

[1] *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ...") *(ABM Industries Overtime Cases, A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018))*. (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015 ECF 132 at page 3.

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable text *while* a fax was being transmitted to the bank's computers for integration with a database.

behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services.[5]

5. I have developed highly available, upwardly scalable databases for use in the telecommunications industry. The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities. Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks, Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice.

6. Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted. I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

7. I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

8. I held a CPCN[6] ("Certificate of Public Convenience and Necessity") – a special license and compliance certification granted to companies that provide essential public services,

---

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

[6] Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022). Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

such as telephone corporations. The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a reissue of my initial CPCN granted to TelSwitch on June 10, 1994, which I held for approximately 18 years before taking a hiatus from providing public telephone services. The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built, and programmed with the phone network for the purpose of providing wholesale and retail telecommunications services.

9. I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of calls (and texts). For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of the defendant in a case in which the Court certified a class of consumers who received pre-recorded calls to their cellular telephone numbers.

**Expertise Specifically Related to Database work.**

10. I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

11. I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin). I have been told that, among other cases, *Bluford v Safeway, Inc*. established the framework for what eventually became known as AB1513 and Labor Code section 226.2, which governs compensation in the piece rate context.

12. In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court). Relying heavily upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes. The court noted that there was sufficient evidence contained within my expert report to support

certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

13. I was also expert in *Beatriz Aldapa And Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC,* (Case No. 1:15-CV-00420-DAD-SAB ED, Ca.), where the employer used Datatech to maintain an accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

14. I have applied similar methods to structure large amounts of unstructured data on behalf of defendant *Verizon Wireless* and *Collecto* in *Lofton v. Verizon* (Case No. 3:13-cv-05665) and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*, I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in defendant Verizon's possession that Plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place. I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement. The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

15. I was also engaged on behalf of plaintiff Michael Anthony in *Michael Anthony v. The Federal Savings Bank, National Bancorp Holdings, Inc. and FDE Marketing Group LLC* (Case No. 1:21-cv-02509, ND, Il, Eastern Div.) in which I undertook a comprehensive analysis of the Defendants records in support of class certification. The order granting class certification is attached as Exhibit 6.

**Materials and Documents Reviewed and Relied Upon.**

16. In conducting my analysis and preparing my conclusions and opinions, I relied upon the following materials and information:

**I. Materials that I relied upon:**

(a) The First Amended Complaint ("FAC"), ECF 30.

**II. Electronic database resources that are available to me:**

(a) FTC's National Do-Not-Call Registry ("DNC") Database[7].

(b) Index of the North American Numbering Administrator's Numbering Plan Area Codes that are TCPA-eligible, sorted by location ("Numbering Plan, Appendix A").

(c) The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.

(d) External, publicly available databases, including iConectiv's WDNC[8,9] for use in identifying the type of line (and the carrier) and the Federal TCPA-eligible area code list that is published daily by the FTC[10].

**Methods and Tools Used to analyze Records.**

17. I create and analyze databases using Structured Query Language (SQL). A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information. Tables that share at least one attribute in common are "related." Tables without a common attribute may still be related via other tables with which they do share a common attribute. The pathways relating those separate tables are called "joins." Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information. To access such information, a user

---

[7] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10376173-476173-21.

[8] FCC order FCC-15-35A1 (03/27/2015) explicitly mandated *continued* availability of the FCC's data – maintained by iConectiv – for all purposes related to the TCPA. (¶142). The historical information *does not* contain subscriber information, only carrier of record and line type. Before number portability, this would have been a simple task of looking at the Local Exchange Routing Guide ("LERG"), or absent access to the LERG, finding the area codes and prefixes from an online collection of national phone books. TelSwitch, Inc. is a reseller and authorized user of the FCC's data maintained by iConectiv.

[9] In *Perrong v Call Identified as Connor* (Case No. 1:22-cv-04479-CPO-EAP, DC, New Jersey, Camden Vicinage), "plaintiff has queried the database of iConectiv, the company charged by the Federal Communications Commission to administer the Number Portability Administration Center, which is the master database which lists which telephone provider services a particular number, among other information required to route telephone calls to the proper provider" (ECF 3)

[10] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10376173-476173-21.

sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages." The most common query language is SQL. A proper query in this language consists of one or more "clauses." Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses. Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as well as the complex syntax of the specific query language.

18. When analyzing call records, I start by creating a database to serve as a repository for the call records and any other related records. I then create database tables to accumulate the results of the associated DNC queries that I run against the FTC's national DNC database – queries that tag each call with a "*yes*" in the field indicating that the telephone number been on the DNC registry for more than thirty (30) days. I then establish a file of telephone numbers to compare against the RND database fields that the FCC's database tags with the status of the telephone number on the specified dates.

19. Finally, if asked, I also then create a set of tables to accumulate the results of the other identifiers related to the telephone numbers, such as *isPorted*, *isWireless*, *mostRecentPortDate*, *state*, and *operating (telephone) company*, that can be used to identify whether a number was wireless, or wireline, and if ported, the date when the number had moved, or transitioned from one carrier to another.

20. By using a set of standardized SQL queries, I am able to tag each record according to (a) any data field contained in the call detail records, including the telephone number called, the date of a telephone call, the duration and disposition of any call; (b) any data field contained in any associated leads records; and (c) whether the number was on the national DNC list for more than thirty (30) days; and (d) whether the telephone number to which the call had had received two or more calls within 365 days. I am also able to identify any calls that were made after the inclusion of that number on the Defendant's internal DNC list.

21. This is precisely the task that I will undertake for Plaintiff in this matter, guided by

Case 0:25-cv-01459-SEB-RMB Document 95-6 Filed 09/01/26 Page 9 of 19

my many years of experience with these precise tasks. I construct all SQL statements myself and am the sole author of all work product associated with the methodologies I propose.

**Steps I will take to Organize and Analyze the Calls.**

22. I will start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs"). I do this to (a) determine the format that the records are stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of the calls.[11]

23. I will then import the CDRs file into SQL database tables using Microsoft SQL™ Enterprise Manager. I will then place the totality of the t into a database called *dbo.calls*, upon which I will run SQL statements.

24. I will then apply a set of filters to include only calls:

a. that were made either (a) to a number that contained precisely ten digits and started with a 2 through 9, or (b) to a number that contained precisely eleven digits and started with a 1 followed by a 2 through 9; and,

b. that were contained within structurable data; and,

c. that had an associated date; and,

d. Indicated whether calls were placed to numbers that had been on the national DNC list for more than thirty (30) days and how many calls had been placed to that number during such; and,

e. Indicated whether calls had been placed to numbers after inclusion on the internal DNC list.

25. To identify which telephone numbers were called while on the national DNC list for more than thirty (30) days, I use a database called *isDNC*, which contains FTC's DNC lists going back nearly ten years. Each telephone number is compared against the contents of the

---

[11] I typically do not need to apply any pre-process to the CDRs, as most CDRs originate from electronic call data capture systems that are already Electronic Data Interface ("EDI") capable.

DNC files to identify whether the telephone number to which the call was placed had been on the DNC list for more than thirty (30) days, and whether two or more calls had been placed within 365 days of one another to that number. And to identify those calls that had been made to telephone numbers that were on the Internal DNC ("IDNC") list, I first identify the date that the telephone numbers had been placed on the internal DNC list, and then I tally the calls that had been made after that date.

26. As a result, I will be able to identify which calls were placed to telephone numbers that were on the DNC for more than thirty (30) days, and which of those telephone numbers had been called on two (2) or more occurrences within 365 days.[12] I am also able to identify how many of those calls were made to telephone numbers after their placement on the Defendants' Internal DNC list.

**Conclusions.**

27. It is my opinion that using the call records maintained by or on behalf of Defendant, there is a reliable method to identify those calls that were placed to telephone numbers contained on the national Do Not Call ("DNC") list for more than thirty days, and how many calls were placed to those numbers within 365 days of one another. It is also my opinion that there is a reliable method to identify those numbers to which two or more calls had been placed to the number within 365 days. I am also able to identify those calls placed to numbers after those numbers had been included on the Defendant's Internal DNC ("IDNC") list.

28. And it is my opinion that there is a reliable method to identify calls with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

---

[12] Attached as Exhibit 7 is an example of how I used my methodology to identify that the Named Plaintiff David Donahue's number ending in -0798 was on the DNC list for more than thirty (30) days as of 07/26/2022.