**2020 WL 3507607 (S.D.Ind.) (Expert Report and Affidavit)**
United States District Court, S.D. Indiana,
Indianapolis Division.

Calvin JACKSON, Plaintiff,
v.
REGIONS BANK, Defendant.

No. 1:19-cv-01019-JMS-MPB.
March 6, 2020.

**Affadavit of Aaron Woolfson**

**Name of Expert:** Aaron David Woolfson
**Area of Expertise:** Computers & Electronics >> Telecommunications
**Area of Expertise:** Computers & Electronics >> Software
**Representing:** Defendant
**Jurisdiction:** S.D.Ind.

I, Aaron Woolfson, declare as follows:

1. My name is Aaron Woolfson. I am over the age of eighteen years. I am the founder of TelSwitch, Inc., which I started in 1994. I have been retained by Krieg DeVault LLP, attorneys for Defendant, *Regions Bank* ("Regions" or "Defendant") in *Calvin Jackson v. Regions Bank* (Case No: 1:19-cv-01019-JMS-MPB, SD Indiana, Indianapolis Division) to provide expert opinions.

2. I was tasked with responding to the Report of Plaintiff's Expert, Jeffrey A. Hansen ("Hansen"), dated January 20, 2020, to proffer opinions related to validity of Hansen's opinions and statements as to whether certain telephone dialing equipment and software supplied by Noble Systems Corporation ("Noble") to Regions had characteristics of an Automatic Telephone Dialing System ("ATDS")[1] or the capabilities that could cause it to act as an ATDS as defined under the TCPA and relevant jurisprudence, and to offer my own opinions on these issues.

3. I am personally familiar with the matters set forth in this report, and, if called as a witness, I could and would readily and competently testify as to them. In rendering my opinions I was in part also guided by my years of experience in this field with similar tasks.

4. This report reflects the results of my study of the underlying facts, independent analysis of the data provided by the Defendant, and fundamental defects of Mr. Hansen's report and opinions. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances.

**Summary of my findings and opinions:**

5. Based upon my familiarity, review, and personal knowledge of the Noble system used by Regions, including the site inspection at Regions that I conducted on February 24, 2020, and based on my experience in this field, it is my conclusion that the Noble equipment used by Regions:

a) Cannot generate telephone numbers, sequential or random, and then dial those numbers. Only those numbers that were registered by Region's customers are able to be called by Regions when a qualifying activity takes place on an account.

b) Does not operate in a manner to cause it to call sequentially or randomly. The Noble system used by Regions can only dial the numbers that have been manually introduced into it by the Region's credit team.

c) Cannot make any calls without significant human intervention. All numbers to which calls are placed requires human input by specially trained staff, which requires that they introduce the numbers into the Noble system, to assign agents to the skill set groups, then assign the skill set groups to campaigns. The dialer team must start campaigns and stop campaigns, and continue to monitor and adjust the workflow to ensure that the correct balance of call center staffing is maintained to ensure the proper flow of inbound and outbound calls.

d) Noble itself does not itself maintain an integrated database and therefore cannot maintain a set of numbers which can be called at a future date or time. Once a collection of work cards that has placed into the work queue for the agents expires, the contents of the list are not stored for future use.

e) Noble is a closed-source system. It has been manufactured to operate in a precise manner, which is to only allow telephone calls to be made to numbers that have been introduced into it from an external source. My understanding is that Regions does not have access to Noble's source code that would be required to modify it to operate in an automatic fashion, to cause it to be able to create random or sequential numbers.

f) Regions did not generate calls to Plaintiff using a system with a random or sequential generator and dial those calls.

g) The Noble System used by Regions does not demonstrate, nor maintain the capabilities that would be considered characteristic of a system with the capacity to act as an ATDS or the capabilities that could cause it to act as an ATDS under the TCPA and relevant jurisprudence.

**Qualifications.**

6. I have over 25 years of experience in developing and analyzing databases and telephone systems. I have designed and implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications and payroll industries. I have established interfaces between telephone systems and the networks that convey calls. I served as an expert witness in multiple cases where I evaluated the technical aspects of telephone systems, including whether they had random or sequential number generator.

7. My qualifications and curriculum vitae are attached as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and State courts.[2] My testimony has been relied upon by courts in both individual and class actions,[3] by plaintiffs and defendants. I have successfully passed a Daubert challenge.[4] My opinions have also been relied upon in arbitrations.

8. I have developed highly available, upwardly scalable databases and telephone systems, including "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day. The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities. Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks, Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice. To date, hundreds of millions of calls

have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response (IVR) services.[5]

9. I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

10. I hold a Certificate of Public Convenience and Necessity ("CPCN")[6] - a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations. The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a reissue of my initial CPCN granted to TelSwitch on June 10, 1994. The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built, and programmed with the phone network for the purpose of providing wholesale and retail telecommunications services.

11. I have been responsible for reviewing telephone systems at call centers to proffer opinions on whether they contained the random or sequential number generation capabilities, and then dial those numbers. In my work as both an expert witness and as a business consultant, I reviewed equipment and processes at multiple call centers to identify the capabilities of the phone systems within those operations - including whether those systems were capable of generating random or sequential numbers, and then dialing those numbers.

12. Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed, received, and transmitted. I am familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

13. I am not aware of any court that has issued an opinion that I was not qualified as an expert related to my opinions on the use of telephony systems in TCPA cases.

**Notable TCPA Engagements**

14. I have been designated as an expert in over 120 cases involving allegations of violations of the TCPA such as in this case, including the following matters:

a) *Gaines v. Law Office of Patenaude & Felix A.P.C.,* Case No. 3:13-cv-01556-JLS-DHB (S.D. Cal. May 27, 2016). Mr. Hansen served as plaintiff expert on behalf of *Gaines.* In *Gaines,* I was tasked by the defendant with analyzing the defendant-produced telephone records and describing the operational characteristics of the telephone system that Patenaude & Felix utilized to make calls to the plaintiff. My on-site visit verified the telephone system did not "automatically" make any calls. I was also tasked with responding to the Mr. Hansen's expert report. I also investigated whether there was a reasonable, reliable, and accurate way to identify the recipients of calls on mobile phones reached by the defendant, on the dates that the numbers were called. In the court's order (ECF 132, September 21, 2015) the court reiterated its findings from the previous order (ECF 118) denying class certification. The court also stated, "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." (ECF 132).

b) *Barnes v. Conn Appliances, Inc.,* 2018 WL 4100943, Case No. 3:16-cv-00413-HTW-LRA (S.D. Miss. Aug. 28, 2018). I was the expert opposite of Mr. Barnes's expert Mr. Hansen. In *Barnes, I* was tasked with determining whether the Noble equipment used by Conn Appliances to place telephone calls, in regards to a past due debt, to Ms. Barnes' mobile telephone number constituted calls made by an ATDS by equipment that is capable of creating lists of sequential or random numbers <u>and</u> dialing those numbers. My on-site visit confirmed the Noble system used by Conn's was not capable of creating lists of sequential or

random numbers, nor did it "automatically" make calls. I also observed the Noble system used by Conn's required a direct and constant "human intervention" to place a call to debtors in arrears on payments.

c) *Keyes v. Ocwen Loan Servicing, LLC* 335 F.Supp.3d 951 (E.D. Mich. 2018). I was the expert who was opposite of Keyes' expert Mr. Hansen. In *Keyes, I* authored an expert report in rebuttal to Mr. Hansen. Following an on-site inspection of Ocwen's Aspect System, I opined that the defendant's telephone system did not contain a random nor a sequential number generator and it required significant human intervention to operate the Aspect System. The court order entered August 8, 2018 (ECF 96) granted exclusion of the plaintiff's expert and granted a partial summary judgement in favor of defendant. In the Order, the court stated, "No evidence in the record indicates that Hansen has tested or inspected the Aspect System which Ocwen called Keyes from..." Further, the court stated, "As a result, Hansen's report is 'unsupported speculation' and a 'mere guess' regarding how Ocwen uses the Aspect System.":

"His report, then, is insufficient under Daubert. There is "simply too great an analytical gap between the data and the opinion proffered by Hansen, making his report simply the *'ipse dixit'* of an expert." (ECF 96, Page 11 of 23).

The Judge further opined, "And this Court has reasoned that a device must be able to call and generate numbers randomly or sequentially to qualify as an ATDS. Put another way, simply calling from a set list is not enough for equipment to constitute an auto-dialer." And that "based on the foregoing, the Aspect System is not an ATDS as a matter of law. Ocwen, then, will prevail on its motion for partial summary judgment. Because the Court concludes that no reasonable person could find that the Aspect System is an ATDS, Ocwen is entitled to summary judgment on Keyes's TCPA claims, Counts I and II." (ECF 96, Page 22 of 23).

d) *Luster v. Green Tree Servicing, LLC,* 2017 WL 7733792, Case No. 1:14-cv-01763-ELR (N.D. Ga. Sept. 29, 2017). In *Luster,* I authored an expert report in rebuttal to *Luster's* expert, Mr. Hansen. The court's order filed November 27, 2018, reaffirmed a September 5, 2018 order, in which the Judge reaffirmed the court's decision to exclude "...the testimony of the Plaintiff's expert for precisely the reason the law allows, a lack of reliability." (ECF 158, Page 7 of 10).

e) *Roark v. Credit One Bank, LLC,* 2018 WL 5921652, Case No. 0:16-cv-00173-PAM-ECW (D. Minn. Nov. 13, 2018). I authored an expert report in rebuttal to Roark's expert, Mr. Hansen. In my expert report I proffered an opinion that the defendant's telephone system did not contain a random nor a sequential number generator. The court's order denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment, stating:

"Credit One's predictive dialing systems do not violate the TCPA because there is no evidence in the record that they are presently used to generate and dial random or sequential numbers. Therefore, there is no genuine issue of material fact." (Page 7 of 7, ECF 105).

**Materials Reviewed and Relied Upon and Site Inspection.**

15. In conducting my analysis and preparing my conclusions and opinions in this engagement for Defendant Regions, I relied upon the following materials and information:

a) The pleadings and pertinent discovery exchanged in this matter.

b) The Deposition Transcript of Benjamin Russell taken December 17, 2019.

c) 47 U.S.C. § 227(a)(1) and 47 U.S.C. § 227(b)(1)(A)(i).

d) The Federal Communication Commission Report and Order, *In the Matter of Rules and Regulation Implementing the Telephone Consumer Protection Act of 1991 dated July 3, 2003,* FCC Order 03-153.

e) The Federal Communication Commission Declaratory Ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling, dated January 4, 2008,* FCC Order 07-232.

f) The Federal Communication Commission Declaratory Ruling and Order, *In the Matter of Rules and Regulations Implementing Telephone Consumer Protection Act of 1991, dated July 10, 2015,* FCC Order 15-72 and in specific, page 15 of 138.

g) *Federal Communication Commission response to ACA International, Petitioners;* USCA Case No. 15-1211, Document #1594039, Filed: 01/15/2016 (page 33 of 110 and page 50 of 110).

h) *ACA International v. F.C.C.,* 885 F.3d 687, 695 (D.C. Cir. 2018).

i) Mr. Hansen's Report for the Plaintiff in *Jackson v. Regions* dated January 21, 2020.

j) The Noble documents and manuals for the telephone system that was used to make calls to the Plaintiffs in this case.

k) Hansen Exhibit N - 1992 FCC Order

l) Hansen Comments submitted to FCC D.C. Circuit's ACA International Decision (June 2018).

m) The cases cited in this Affidavit and my Report.

16. I additionally conducted an on-site inspection at Regions in Alabama on February 24, 2020 to inspect the factual implementation of Noble at Region's offices. I conducted the site inspection to observe how Noble was used, and how it was operated by Regions because I wanted to observe its factually implemented operation by the "dialer team", which consisted of two individuals who were responsible for starting, stopping, and pacing the campaigns, and balancing flow of inbound and outbound calls to agent availability. I also wanted to better understand the technical aspects of the interface-to-interface methods by which it interfaced to the Region's computers.

17. I also reviewed various statements that Mr. Hansen has made in this matter and compared them with the statements that he made in his expert reports in *Keyes v. Ocwen Loan Servicing, LLC* and *Luster v. Green Tree Servicing, LLC* for any disparities or similarities in his conclusions or methods.

18. This Affidavit is a shorter version of my more detailed response as contained in "The Expert Report of Aaron Woolfson" signed on this same date and provided to Plaintiff's counsel on this same date.

Footnotes

1 Automatic Telephone Dialing System as defined by the Telephone Consumer Protection Act of 1991 at 47 U.S.C. § 227 *et seq.*

2 *E.g., ABM Industries Overtime* Cases, 19 Cal. Rptr.3d 445, 455 n.5 (Cal. Ct. App. 2017) ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ....").

3 "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." Order Denying Plaintiff's Request to Re-Open Class Discovery, *Gaines, et al v. Law Office ofPatenaude & Felix, A.P.C.,* Case No 3:13-cv-01556-JLS-DHB (S.D. Cal. Sept. 21, 2015), ECF 132 at 3.

4 Order Granting-In-Part and Denying-In-Part Motion to Certify Class, *Miguel Rojas-Cifuentes et al. v. ACXPacific Northwest, Inc., et al.,* Case No. 2:14-cv-00697-JAM-CKD (E.D. Cal. May 17, 2018), ECF 73 at 38.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

5 Interactive Voice Response (IVR); IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF (“Dual Tone Multi Frequency”) is the signal you generate when you press a telephone's touch keys.

6 Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022). Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.